ERVIN, Judge,
concurring and dissenting.
On further reflection, I would grant appel-lees’ motion for rehearing and reject appellant’s asserted error that the trial court erred in refusing to instruct the jury that a violation of a traffic regulation is evidence of negligence. In so concluding, I note that Safety Kleen’s only theory of defense at trial was that the Ridleys neglected “to mitigate their own damages through the use of an available, operational seat belt and that all damages should be denied ... or ... any damages to which they might be entitled should be reduced in direct proportion to their own failure to mitigate such damages.” No contention was made that Harold Ridley’s nonuse of a belt in any way contributed to the accident between the two vehicles. Indeed, during the charge conference, counsel for Safety Kleen indicated that the requested instruction went only to the plaintiffs’ failure to mitigate their damages, saying: “So, it is our position that the only issue that should go to the jury is should his failure to wear a seat belt, did it cause or contribute to his injuries.”
It is a well-established rule that the trial court is required to charge the jury on the law applicable to a violation of a traffic law only when the question of such violation is put at issue by pleadings and evidence. Allen v. Rucks, 121 So.2d 167 (Fla. 1st DCA), cert, denied, 125 So.2d 877 (Fla.1960). Thus, I think it abundantly clear from the affirmative defenses and the arguments made during trial that Safety Kleen raised the seat belt defense solely as a means of mitigating the Ridleys’ damages which occurred following the collision with Safety Kleen’s vehicle. I am therefore of the opinion, for the reasons stated more fully infra, that section 316.614(10), Florida Statutes (1991), permitting a jury to be instructed that a violation of the Florida Safety Belt Law may be considered as evidence of comparative negligence, applies only when a plaintiffs failure to use a safety belt contributes to the damages he or she suffered in the collision with another vehicle. Section 316.614(10) does not apply, however, to the plaintiffs damages resulting from his collision with the interior of the vehicle which he occupies, as they fall within the area of mitigation of damages, which the statute specifically excludes from consideration.
In so saying, I am aware that this court has observed in Parker v. Montgomery, 529 So.2d 1145 (Fla. 1st DCA), review denied, 531 So.2d 1354 (Fla.1988), which involved the defense of failure to place a child passenger in a safety restraint device, that the concept of mitigation of damages has been subsumed within the doctrine of comparative negligence. Nevertheless, in Parker, we pointed out the legal distinctions between the two terms:
In that Florida has judicially adopted “pure” comparative negligence, meaning that a plaintiffs contributory fault does not operate to bar his or her recovery altogether, but serves to reduce his damages in proportion to his fault, see Hoffman v. Jones, 280 So.2d 431 (Fla.1973), it is important to analyze the term mitigation of damages or avoidable consequences in relation to both the doctrines of contributory negligence and comparative negligence. A plaintiffs contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant, whereas the plaintiffs fault in failing to mitigate damages generally arises after the wrongful act of the defendant. A commonly given example of the latter is the failure of a plaintiff to obtain without unreasonable delay medical treatment following accidental injury. Accordingly, if some of the damages incurred could have reasonably been avoided by the plaintiff, the latter doctrine prevents those damages from being added to the amount of damages recoverable. See 22 Am.Jur.2d Damages § 31 (1965). The most significant difference between avoidance of consequences and contributory negligence is in their effect, how *918 ever. Id. In states where comparative negligence has not been adopted, contributory negligence acts as a complete bar to a plaintiff’s cause of action. On the other hand, the doctrine of avoidable consequences does not bar the entire action; it simply prevents recovery of those post-accident damages that could have been reasonably avoided.
Id. at 1147.
Consequently, in jurisdictions which retain the doctrine of contributory negligence, the mitigation of damages concept is regarded as an exception to the doctrine, because nonuse of a seat belt ordinarily involves post-accident conduct, which aggravates the damages resulting from the accidental injury. Id. at 1147-48. On the other hand, in states which have adopted both comparative negligence and the seat belt defense, damages are commonly allocated to two separate causes, i.e., those caused by two different collisions resulting in a single harm. Thus, in a typical automobile accident involving nonuse of a seat belt, two collisions occur: the first being that between the two vehicles colliding with one another, and the second, caused by the first, when the unbelted occupant of the vehicle collides with the vehicle’s interior. It is only those additional damages caused by the second collision that are relevant to the seat belt defense, and which therefore should be apportioned under a mitigation of damages or avoidance of consequences theory.
Id. at 1149 (emphasis added).
The notes to Standard Jury Instruction 6.14 furnish an example of the above procedure, stating that if a plaintiffs total damages are found to be $100,000 and a defendant is determined to be 80 percent negligent, with the plaintiff 20 percent negligent, the latter’s net recovery without regard to seat belt mitigation would be $80,-000. In addition thereto, if the jury finds that the claimant’s failure to wear a seat belt accounted for 10 percent of his total damages, the court will enter a judgment for $72,000. See Fla.Std.Jury Instr. (Civ.) [hereinafter SJI] 6.14, Note 3.
The above example followed the procedure the Florida Supreme Court approved in Insurance Co. of North America v. Pasakamis, 451 So.2d 447, 454 (Fla.1984). The 1986 Florida Legislature codified parts of the Pa-sakamis decision by enacting section 816.614, making it unlawful for front-seat occupants of motor vehicles to fail to use operable safety belts when the vehicles are in motion. Specifically, subsection (10) thereof provided: “A violation of the provisions of this section shall not constitute negligence per se, nor shall such violation be used as prima facie evidence of negligence in any civil action.” The above version of the statute was intact at the time of the last revision of the Committee’s notes to SJI 4.11 in March 1989, pertaining to the standard instruction advising that violation of a traffic regulation is evidence of negligence. The Committee commented that a charge on a violation of a traffic regulation “should not be given if the statute or ordinance in question provides that the violation is not evidence of negligence.”
Thus, I think it reasonably clear that because of the prohibitory language then contained in section 316.614(10), no authority was given a trial court to instruct the jury in the manner requested below. Nor, do I believe, for the reasons stated hereafter, any such authority now exists following the statute’s amendment, effective October 1, 1990, under the circumstances existing in the present ease.
In 1990, section 316.614(10) was amended by adding the following underlined language:
A violation of the provisions of this section shall not constitute negligence per se, nor shall such violation be used as prima facie evidence of negligence or be considered in mitigation of damages, but such violation may be considered as evidence of comparative negligence, in any civil action.
Ch. 90-119, §§ 24, 55, at 382, 403, Laws of Fla. (emphasis added).
In examining the amended language, one might well ask, in that the concept of mitigation of damages has been subsumed within the doctrine of comparative negligence, why the legislature would forbid trial courts from instructing the jury that a violation of section 316.614 shall not be considered in mitigation of damages, while at the same time permit a court to instruct that a violation of same may *919 be considered as evidence of comparative negligence. On its face, the statute appears to permit a trial court to instruct the jury that a violation of the Florida Seat Belt Law is evidence of the violator’s comparative negligence, even when the defense presents such evidence solely as a means of showing that the claimant failed to mitigate his or her damages. Yet, if section 316.614(10) is read in that manner, then the legislative restriction provided in the same amendment, barring a violation of the Florida Safety Belt Law from consideration in mitigation of damages, becomes absolutely meaningless or, at the minimum, redundant.
It is a well-worn statutory maxim that one should never presume that the legislature intended to enact purposeless, and, therefore, useless legislation. See Dickinson v. Davis, 224 So.2d 262 (Fla.1969); Sharer v. Hotel Corp. of Am., 144 So.2d 813 (Fla.1962). I strongly question, moreover, whether the legislature intended to authorize an instruction such as that requested below. The legislative purpose of the 1990 amendment was to avoid the potential of injured plaintiffs being penalized by having damages twice reduced for nonuse of safety belts, which, some legislators believed, might result from application of the 1986 act — first in apportioning fault under the comparative negligence doctrine and later in reducing damages as a failure to mitigate. George N. Meros & Mary Whitney Chaisson, The Seat Belt Defense is Alive and Well Under the Amended Section 316.6If 14 Trial Advoc.Q. 9, 10 (1995) [hereinafter Meros & Chaisson ]. According to Meros & Chaisson, Senator Robert Johnson expressed this concern at a meeting of the Senate Judiciary-Civil Committee on April 25, 1990, where he claimed
that accident victims were taking a “double hit” under the 1986 version of the statute. Senator Johnson’s intent, at least, was to modify the law to guard against the possibility that a plaintiff would be penalized twice for failing to wear a seat belt. He was .concerned that, without the amendment, a plaintiffs recovery could be completely diminished by a jury’s taking the plaintiffs nonuse into consideration in assigning comparative fault and again in deciding whether the plaintiff had failed to mitigate his or her damages.
The Senators in the Judiciary-Civil Committee in 1990, believed that it was appropriate for a jury to consider a plaintiffs nonuse of a seat belt in assigning comparative fault, but felt that the statute as originally enacted created a risk that the jury would also consider it in deciding whether the plaintiff had done everything necessary to mitigate damages. They accentuated that it would be unfair for a plaintiff to be penalized twice for the same thing.
Id. at 11 (footnotes omitted).
In my judgment, the legislative purpose behind the 1990 amendment to section 316.614 of avoiding a double reduction in damages is compromised by an instruction authorizing a trial court to advise a jury that a violation of the seat belt law may be considered as evidence of the violator’s comparative negligence, when the evidence of nonuse is submitted only to show that the plaintiffs infraction resulted in his or her failure to mitigate damages. This is particularly true because the trial court is, by the same statute, specifically forbidden from informing the jury that such violation may be considered in mitigation of damages. The possibility of a “double hit” to plaintiffs becomes far greater, in my opinion, when jurors are instructed that they can consider a violation of the Florida Safety Belt Law as evidence of comparative negligence, because jurors could not be so instructed before the statute’s amendment in 1990. The coupling of the above charge together with SJI 6.14, relating to a plaintiffs failure to use an operable safety belt, which is applicable only on the ground that the plaintiffs failure to use a belt resulted in a breach of his obligation to mitigate damages, enhances the confusion that the amended statute was designed to avoid.
Because of the potential for even greater confusion following the statute’s amendment than that which attended the initial legislation, I think the only plausible way to construe the term comparative negligence, added to the statute in 1990, is to make it synonymous with contributory negligence, as *920 the Florida Supreme Court used that term in Pasakamis:
If the jury returns a verdict for the plaintiff, finds that plaintiffs negligence was a contributing cause of the accident, and finds that plaintiffs failure to wear an available and fully operational seat belt produced or contributed substantially to producing at least a portion of plaintiffs damages, then the trial court in its final judgment should first reduce the total amount of damages by the percentage of the plaintiffs contributory negligence and then reduce this amount by the percentage attributable to plaintiffs failure to wear the seat belt.
Pasakamis, 451 So.2d at 454.
As Meros and Chaisson noted, the contributory negligence referred to in Pasakamis “is the plaintiffs contributory negligence, if any, in causing the first accident.” Meros & Chaisson, at 11 (emphasis modified). In that Florida has judicially recognized the doctrine of comparative negligence, it is obvious that the term, contributory negligence, as used in Pasakamis, is identical to that of comparative negligence, meaning the plaintiffs negligence occurring “before or at the time of the wrongful act or omission of the defendant.” Parker, 529 So.2d at 1147 (emphasis omitted). Moreover, the reduction for “the percentage attributable to plaintiffs failure to wear the seat belt,” required by Pasakamis, refers to the plaintiffs failure to mitigate damages caused when the unbelted occupant of the vehicle collides with the vehicle’s interior. Consequently, in order to give proper meaning to the term comparative negligence, as used in section 316.614(10), it must be afforded, in my opinion, the same construction as the term contributory negligence was used by the supreme court in Pasakamis.
Therefore, the only conceivable basis I can perceive for giving a modified instruction of SJI 4.11, advising that a violation of the seat belt law is evidence of negligence, occurs only in those extremely rare situations where the plaintiffs nonuse of same contributes in some way to the accidental collision with the defendant’s vehicle. If, on the other hand, the theory of the defense is only that the plaintiffs violation of the statute contributes to an aggravation of the damages suffered following the accidental collision with the defendant’s vehicle, SJI 4.11 should not be given, because of the language in section 316.614(10), prohibiting consideration of the statute’s violation in mitigation of damages.
Alternately, if the trial court erred in refusing to give a modified instruction on SJI 4.11,1 conclude that the refusal to do so was harmless error, as the jury was fully advised, via SJI 6.14, that it could consider whether any or all the Ridleys’ damages were caused by Harold Ridley’s failure to use a seat belt. See Tooley v. Margulies, 79 So.2d 421 (Fla. 1955); Thursby v. Reynolds Metals Co., 466 So.2d 245 (Fla. 1st DCA 1984) (no error in refusing to give requested instructions on issues adequately covered by the court’s instructions), review denied, 476 So.2d 676 (Fla.1985). As the comment to SJI 6.14 makes clear:
This charge is appropriate when the seat belt issue is raised in diminution of claimant’s damages for claimant’s failure to mitigate damages. When the issue is rather where the claimant’s failure to use a seat belt contributed as a legal cause to the accident itself, ... the issue is presented by the comparative negligence charge, 3.8.
In the present case, the trial court gave SJI 3.8. Additionally, the verdict form contained a space allowing for a reduction of the Rid-leys’ damages attributable to the nonuse of the belt. In conclusion, it is inconceivable to me that Safety Kleen was in any way harmed by the trial court’s refusal to give the requested instruction.
Nevertheless, I concur with the majority that because of the confusion attending a proper construction of section 316.614(10), a question of great public importance should be certified to the Florida Supreme Court. I am unable to concur with the question the majority certified because, in my judgment, it does not properly take into account the fact that Safety Kleen’s utilization of the seat belt defense went only to the Ridleys’ failure to mitigate their damages, and not to any plea that the nonuse of same contributed to the cause of the initial accident between the two vehicles. I am therefore of the view that a more accurate question, as applied to the *921 defense theory Safety Kleen advanced, is the following:
ONCE A TRIAL COURT AGREES TO GIVE FLORIDA STANDARD JURY INSTRUCTION 6.14 (PERTAINING TO A PLAINTIFF’S FAILURE TO USE AN AVAILABLE AND FULLY OPERATIONAL SEAT BELT), DO THE PROVISIONS OF SECTION 316.614(10), FLORIDA STATUTES, REQUIRE IT TO GIVE AS WELL FLORIDA STANDARD JURY INSTRUCTION 4.11 (INVOLVING A VIOLATION OF A TRAFFIC REGULATION AS EVIDENCE OF NEGLIGENCE), OR A MODIFICATION THEREOF, IF THE RECORD DISCLOSES THAT THE THEORY OF THE DEFENSE IN RELYING ON THE VIOLATION (THE NONUSE OF A SEAT BELT) IS SOLELY FOR THE MITIGATION OF THE PLAINTIFF’S DAMAGES CAUSED BY HIS OR HER FAILURE TO USE THE BELT?
Finally, I address an issue the majority does not reach, because of its disposition in reversing and remanding the case for new trial. I agree with Safety Kleen that the amount of the damages entered must be reversed and recalculated, because the jury failed to reduce future economic damages to present value, and it twice included the sum of $24,500 for past medical expenses and lost earnings in its calculations.
I otherwise concur with all other issues addressed in the majority’s opinion.